IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED

AUG 03 2016

Clerk, U S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 02-45-M-DWM |
| Plaintiff/Respondent, | |
| vs. | ORDER GRANTING § 2255 MOTION AND SETTING RE-SENTENCING HEARING |
| DAVID RAY TEEPLES, | |
| Defendant/Movant. | |

Defendant/Movant David Ray Teeples has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He seeks relief under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015). The United States asserts that, because Teeples is challenging a guidelines enhancement that elevated the *advisory* sentencing range, as opposed to a statutory enhancement elevating the ceiling or the floor of the *authorized* sentencing range, he is not entitled to relief under *Johnson*. The parties also dispute whether it is appropriate to stay proceedings on the § 2255 motion to await a decision by the Supreme Court on the point at issue.

Ninth Circuit precedent exists on the point the Supreme Court will be deciding. Teeples has served more time than he likely would if he is entitled to relief under *Johnson*. A stay is not appropriate.

1

# I. Background

Teeples pled guilty to possessing methamphetamine with intent to distribute it and to being a felon in possession of a firearm. At sentencing on July 7, 2003, Teeples was deemed a career offender because he had been convicted in California, on two separate occasions, of lewd and lascivious acts against minors. The crime was found categorically to be a "crime of violence" because it "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (eff. Nov. 1, 2002). Teeples' two prior convictions for a crime of violence triggered a three-level increase in his offense level as well as a three-category increase in his criminal history, elevating the advisory sentencing range from 97 to 121 months up to 188 to 235 months. (PSR, ¶¶ 26-30, 38.)

# II. *Johnson v. United States*

Nearly twelve years later, the Supreme Court considered the case of Samuel Johnson, a defendant who was sentenced under the Armed Career Criminal Act ("ACCA"). For persons convicted of certain federal offenses, the ACCA elevates what is otherwise a maximum sentence of ten years in prison to a mandatory minimum sentence of 15 years in prison and a maximum sentence of life. The increased sentencing range applies if the offender has previously been convicted, under federal or state law, of at least three serious drug offenses or violent felonies. The Act defines a "violent felony" by specifying certain elements, *see* 18 U.S.C. §

924(e)(2)(B)(i), and enumerating certain offenses, see id. § 924(e)(2)(B)(ii), and by describing a "residual" category of crimes "involv[ing] conduct that presents a serious potential risk of physical injury to another," id.—the same words that triggered an increased advisory sentencing range for Teeples.

Despite several attempts over the years to give a coherent definition to this "residual clause," the Supreme Court concluded, in *Johnson*, that it should end its own serial "resort to . . . different ad hoc test[s]," 135 S. Ct. at 2558, and lower courts' "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider," id. at 2560. Convinced by its own experience of the residual clause's "hopeless indeterminacy," id. at 2558, the Court held it void-for-vagueness under the Constitution's Due Process Clause. As a result, "[t]he residual clause . . . can no longer mandate or authorize any sentence" under the ACCA, *Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1265 (2016), because the clause defies fair and consistent application. "[E]ven the use of impeccable factfinding procedures could not legitimate a sentence based on that clause." Id. (internal quotation marks and citation omitted).

### III. New Rules and Old Cases

Because *Johnson* overruled previous decisions by the Supreme Court, "[i]t is undisputed that *Johnson* announced a new rule." *Welch*, 136 S. Ct. at 1264.

3

Because it is based on the Due Process Clause, it is also a constitutional decision. *Id.* at 1261-62. When the Supreme Court prescribes a new rule of constitutional law, the rule applies to cases that are not yet final or are pending on direct review. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

The situation is frequently different, however, with respect to cases, like Teeples', that are final before a new constitutional rule is announced. Teeples' second petition for writ of *certiorari* was denied on May 15, 2006. Under *Griffith*, his conviction became final that day.[1] *Johnson* was decided more than nine years later, on June 26, 2015. So this is the question posed by this case: Is Teeples entitled to the benefit of a rule that did not exist until long after his conviction became final?

To resolve the issue, the Court need only briefly explain the Supreme Court's framework for deciding questions of retroactive application. New substantive constitutional rules and new watershed procedural constitutional rules apply to all cases, even if they are already final at the time the new rule is announced. New "non-watershed" procedural rules do not apply to cases already final when the new rule is announced. *See generally Teague v. Lane*, 489 U.S. 288

---

[1] "Final" means "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith*, 479 U.S. at 321 n.6. Once a conviction is final, only "collateral" review is available.

4

(1989).

"Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718, 729 (2016). So, for instance, persons convicted and sentenced as juveniles to a mandatory term of life in prison without parole are entitled to relief under the rule of *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), regardless of when their convictions became final, because the rule of *Miller* is substantive. *Montgomery*, 136 S. Ct. at 732. Montgomery himself, who benefitted from *Miller* in 2016, had been in custody since 1963. *Id.* at 725-26.

A new procedural rule, by contrast, concerns "the *manner of determining* the defendant's culpability" or "the range of permissible methods for determining" a matter at issue. *Schiro v. Summerlin*, 542 U.S. 348, 353 (2004) (emphasis in original). A claim under a new procedural rule "merely raise[s] the possibility that someone convicted with use of the invalidated procedure might have been acquitted" or otherwise received a more favorable outcome with the use of the new rule. *Id.* at 352. Thus, the Supreme Court has decided that a defendant cannot be sentenced to death based on a judge's findings of fact; that evidence bearing sufficient circumstantial guarantees of trustworthiness is not necessarily admissible; and that a defendant must be allowed to tell the jury that, if it does not

impose the death penalty, he will be sentenced to life in prison without parole. *See generally Ring v. Arizona*, 536 U.S. 584 (2002); *Crawford v. Washington*, 541 U.S. 36 (2004); *Simmons v. South Carolina*, 512 U.S. 154 (1994). But the Supreme Court declined to extend the benefit of those cases' new rules to persons whose convictions were already final when the decisions were issued. Each decision announced a procedural rule, and none of them were watershed procedural rules.[2] *See Summerlin*, 542 U.S. at 355-56, 358; *Whorton v. Bockting*, 549 U.S. 406, 409 (2007); *O'Dell v. Netherland*, 521 U.S. 151, 153 (1997).

All of these cases involve new constitutional rules, so all implicate fundamental rights under the Due Process Clause, whether they are procedural or substantive. But the fact "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction [or outcome] is *seriously* diminished.'" *Summerlin*, 542 U.S. at 352 (quoting *Teague v. Lane*, 489 U.S. 288, 313 (1989)) (emphasis in *Summerlin*). If a particular procedure is so important that its absence seriously diminishes the accuracy of the results, or if a new rule narrows the range of conduct or the class of persons whom the law punishes, then "finality interests are

---

[2] *Gideon v. Wainwright*, 372 U.S. 335 (1963), is the paradigm example of the kind of rule that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *O'Dell*, 521 U.S. at 167 (internal emphasis, quotation marks, brackets, and citations omitted). But, since *Teague* invented the term "watershed rules of criminal procedure" in 1989, no one has spotted one on the hoof.

at their weakest." *Welch*, 136 S. Ct. at 1266. Watershed-procedural rules and substantive rules, therefore, justify re-opening matters long final. But, where a new constitutional rule is one of 'ordinary' procedure, "[t]he chance of a more accurate outcome under the new procedure normally does not justify the cost of vacating a conviction whose only flaw is that its procedures conformed to then-existing constitutional standards." *Welch*, 136 S. Ct. at 1266 (internal quotation marks and citation omitted).

### IV. Teeples' Motion

The United States concedes that Teeples is entitled to relief if *Johnson* applies to his § 2255 motion. Resp. to § 2255 Mot. (Doc. 50) at 17. It argues that *Johnson* does not apply.

In *Welch*, the Supreme Court held that "*Johnson* is . . . a substantive decision and so has retroactive effect . . . to cases on collateral review." 136 S. Ct. at 1265. *Welch*, however, like *Johnson*, was decided under the Armed Career Criminal Act, not the sentencing guidelines. Before *Johnson* was issued, Welch was sentenced to the 15-year mandatory minimum prison term under the ACCA. *Id.* at 1262. After *Johnson*, persons whose sentences depended on exactly the same facts as in Welch's case could be sentenced, at most, to ten years in prison. Because *Johnson* "changed the substantive reach of the Armed Career Criminal Act, altering the range of conduct or the class of persons that the Act punishes," *id.* at 1265 (internal

7

quotation marks, brackets, and citation omitted), the *Welch* Court characterized the rule of *Johnson* as substantive and gave it effect in a case that was final in 2013, two years before *Johnson* was issued. But the *Welch* Court also said that the difference between a rule that justifies re-opening a final judgment and one that does not "depends . . . on whether the new rule itself has a procedural function or a substantive function—that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons that the law punishes." *Id.*

No lawful application of the sentencing guidelines can alter the range of conduct or class of persons the law punishes. There is no doubt the application of the guidelines is very important to determining the sentence that is "sufficient, but not greater than necessary," to achieve the objectives of federal sentencing. 18 U.S.C. § 3553(a). A district court that "improperly calculates a defendant's Guidelines range . . . has committed a 'significant procedural error.'" *Molina-Martinez v. United States*, __ U.S. __, 136 S. Ct. 1338, 1346 (2016) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)) (internal quotation marks and brackets omitted). In the context at hand, describing a guidelines error as procedural may be telling. It is possible, therefore, that *Johnson* will prove to be a two-sided coin, substantive as to statutes defining permissible punishments but procedural as to guidelines defining advisory punishments and contributing to the selection of an

appropriate sentence.

The Supreme Court will very likely decide whether the new rule *Johnson* announces is also a substantive rule as applied to the guidelines or whether, instead, it is a procedural rule as applied to the guidelines. *See Beckles v. United States*, No. 15-8544 (U.S. cert. granted June 27, 2016). Until a decision in that case is handed down, however, this Court is bound to follow Ninth Circuit law.

The disposition here is controlled by *Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011). That case drew on the appellate court's decision in *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc), which implemented a new rule for deciding the meaning of a federal criminal defendant's criminal history under the enumerated offenses clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii). Reina argued that, because he was sentenced under a provision of the career offender guideline that was identical to the statutory provision of the ACCA, the decision in *Grisel* should apply to him as well, notwithstanding the fact that his conviction was final before *Grisel* was decided and his sentence was imposed under the guidelines rather than the ACCA. *Id.* at 1185-87. The court held there were several reasons to decide the issues in favor of Reina, but only one is pertinent here. The court focused on the fact that "*Grisel* altered the punishment that can be imposed on federal defendants under the Armed Career Criminal Act," 18 U.S.C. § 924(e)(2). *See Reina-Rodriguez*, 655 F.3d at 1189. Applying the rules

9

of *Teague v. Lane*, *Grisel* was not a procedural decision but a substantive decision altering the scope of "the conduct that substantively qualifies as burglary under the categorical approach" to applying 18 U.S.C. § 924(e)(2)(B)(ii). Consequently, the court said, there was no bar to applying *Grisel* to cases that became final before it was issued.

So too here. Like *Grisel*, the Supreme Court's decision in *Johnson* "changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes,'" but not affecting "the judicial procedures by which the statute is applied." *Welch*, 136 S. Ct. at 1265 (quoting *Summerlin*, 542 U.S. at 353). Reina, like Teeples, asked the court to apply the rule of *Grisel*, an ACCA case, to the career offender guideline. *See Reina-Rodriguez*, 655 F.3d at 1185-86, 1187. The court did not ask whether the rule of *Grisel* would be procedural or substantive "as applied" to the sentencing guidelines generally or Teeples' case specifically; it asked only whether the decision in *Grisel* itself was procedural or substantive in nature. The court concluded that, because the rule in *Grisel* was substantive, Reina was entitled to its benefits. Teeples, likewise, asks that the *Johnson* rule, which *Welch* has held is substantive, be applied to the procedure for determining his sentence. There is no principled distinction between Teeples' case and *Reina-Rodriguez*. Under the Ninth Circuit's rule in *Reina-Rodriguez*, therefore, there is no bar to applying

10

*Johnson* to guidelines decisions that were final before *Johnson* was issued.

In addition, the Supreme Court's decision in *Welch* made *Johnson* "retroactively applicable to cases on collateral review." *See Tyler v. Cain*, 533 U.S. 656, 664-65 (2001). Teeples had one year from the date of the decision in *Johnson* to file his § 2255 motion. *See Dodd v. United States*, 545 U.S. 353, 357 (2005). *Johnson* was decided on June 26, 2015, and Teeples filed his motion on June 6, 2016. The Supreme Court or the Ninth Circuit may curtail the scope of *Johnson*'s retroactivity to cases on collateral review, but until a higher court does so, Teeples' § 2255 motion is timely under § 2255(f)(3). The United States' statute of limitations defense, *see* Resp. to § 2255 Mot. at 3-4, is not well-taken.

Teeples' § 2255 motion is timely. He is entitled to relief under *Johnson* and *Reina-Rodriguez*.

Accordingly, IT IS HEREBY ORDERED as follows:

1. The United States' motion to stay (Doc. 51) is DENIED.

2. Teeples' motion under 28 U.S.C. § 2255 (Doc. 47) is GRANTED.

3. The Judgment entered on July 7, 2003 (Doc. 30), is VACATED.

4. Sentencing is set for **September 23, 2016**, at **11:00 a.m.** in the Russell Smith Courthouse, Missoula, Montana.

6. The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting the career

offender enhancement. Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

7. The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **August 26, 2016**. The probation officer shall not disclose any recommendation made or to be made to the Court. If an updated presentence report is completed prior to this date, the subsequent schedule may be amended.

8. If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

9. Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **September 2, 2016**. U.S.S.G. § 6A1.2. **Any unresolved objections are expected to be included in the pre-sentence report, not in a sentencing memorandum.**

10. The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **September 13, 2016**.

11. Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **September 19, 2016**.

Sentencing memoranda and supporting documents filed after this date will not be considered in addressing sentencing issues. Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

12. Responses to sentencing memoranda shall be filed on or before **September 22, 2016**.

13. Reply briefs will not be accepted for filing in sentencing matters.

14. The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

15. All parties that intend to have witnesses testify at sentencing shall give notice to this Court ten days prior to the sentencing date.

16. The United States Marshals Service must transport David Ray Teeples, BOP # 07627-046, to the District of Montana. Teeples must be present in Montana and available to consult with counsel at least 30 days before sentencing.

17. When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of Teeples and against the United States.

DATED this 3rd day of August, 2016.

Donald W. Molloy
United States District Court

cc: USMS
USPO